UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| WILLIAM JAY WILKINSON, ET. AL., | ) | |
| | ) | |
| Plaintiffs | ) | CAUSE NO. 3:19-CV-902 RLM-MGG |
| | ) | |
| VS. | ) | |
| | ) | |
| MATTHEW SHEETS, | ) | |
| | ) | |
| Defendant | ) | |

OPINION AND ORDER

Defendant Matthew Sheets sold his business to the plaintiffs in early 2018. He continued to work there until November 2018, when the parties signed a separation and settlement agreement. The next year, William Wilkinson, Jeffrey Miller, DSS Holdings, LLC, and Hoosier Investments, LLC, filed this suit against Mr. Sheets. Mr. Sheets answered and filed ten counterclaims, which the plaintiffs now seek to dismiss. The court heard argument on the motions on June 10. For the reasons stated below, the court grants the plaintiffs' motion in part and denies it in part.

I. STANDARD OF REVIEW

A court considering a Rule 12(b)(6) motion to dismiss construes the complaint in the light most favorable to the nonmoving party, accepts all well-pleaded facts as true, and draws all inferences in the nonmoving party's favor. Reynolds v. CB Sports Bar, Inc., 623 F.3d 1143, 1146 (7th Cir. 2010). But Fed.

R. Civ. P. 8(a)(2) "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (*citing* Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. at 678 (*quoting* Bell Atlantic Corp. v. Twombly, 550 U.S. at 570). A claim is plausible if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. at 678 (*citing* Bell Atlantic Corp. v. Twombly, 550 U.S. at 556). Twombly and Iqbal "require the plaintiff to 'provid[e] some specific facts' to support the legal claims asserted in the complaint." McCauley v. City of Chicago, 671 F.3d 611, 616 (7th Cir. 2011) (*quoting* Brooks, 578 F.3d at 581)). The plaintiff "must give enough details about the subject-matter of the case to present a story that holds together." Swanson v. Citibank, N.A., 614 F.3d 400, 404 (7th Cir. 2010).

## II. STATEMENT OF FACTS

Matthew Sheets owned an Ohio-based staffing company, Day Star Staffing, LLC. Mr. Wilkinson invests in the staffing industry through Hoosier Investments, LLC, of which he is the chief executive officer. Mr. Miller is Hoosier Investments' executive vice president. In January 2018, Mr. Sheets entered into a set of agreements with Mr. Wilkinson and Mr. Miller to sell his company to a Hoosier Investments subsidiary called DSS Holdings, LLC. Under those

agreements, Mr. Sheets received a 20 percent interest in DSS Holdings and authority to manage DSS Holdings's day-to-day operations.

The parties' business relationship soured By November 2018, and they entered into a separation and settlement agreement. In 2019, the plaintiffs sued Mr. Sheets in St. Joseph County, Indiana, Circuit Court alleging defamation and breach of contract. Mr. Sheets removed the action to this court and brought ten counterclaims: (1) breach of contract; (2) breach of fiduciary duty; (3) claim for declaratory judgment that the settlement 2018 agreement is void or voidable; (4) securities fraud; (5) common law fraud; (6) civil conspiracy; (7) defamation, libel, invasion of privacy, and false light; (8) tortious interference; (9) misrepresentation and promissory estoppel; and (10) failure to provide an accounting. The plaintiffs' motion to dismiss all counterclaims followed.

### III. Discussion

*a. Settlement and Release Agreement and Counts I-III*

The plaintiffs argue that all ten counterclaims should be dismissed as a matter of law because Mr. Sheets released his right to bring them under the terms of the parties' November 2018 settlement agreement. Release is the only grounds the plaintiffs raise to support dismissal of Counts I (breach of contract) and II (breach of fiduciary duty). They raise additional arguments as to Counts III-X.

The plaintiffs filed the settlement agreement as an attachment to their amended complaint, but the document is completely redacted. Accordingly, the

court can't determine based on the record before its whether Mr. Sheets released his claims under that agreement.

Mr. Sheets doesn't deny the existence of a release agreement, but argues in Count III of his counterclaims that the agreement is void or voidable because he signed it under duress and because it was fraudulently induced. The plaintiffs counter that Mr. Sheets can't raise claims of fraud or duress when he's received the benefit of the settlement, and that Count III should be dismissed because he hasn't alleged facts showing duress or fraud. Whether the agreement is void or voidable is a fact-specific inquiry that the court should refrain from resolving at this stage because a complaint doesn't have to anticipate an affirmative defense to survive a motion to dismiss. Brownmark Films, LLC v. Comedy Partners, 682 F.3d 687, 690 (7th Cir. 2012); United States v. Lewis, 411 F.3d 838, 842 (7th Cir. 2005).

Mr. Sheets has properly stated claims for duress and fraudulent inducement. The parties agree that Indiana law applies to this dispute. In Indiana, duress is "an actual or threatened violence or restraint of a man's person, contrary to law, to compel him to enter into a contract." Raymundo v. Hammond Clinic Ass'n, 449 N.E.2d 276, 282-83 (Ind. 1983) (*quoting* Williamson v. Bendix Corp., 289 F.2d 389, 392 (7th Cir. 1961)). When examining a claim of duress, the court must determine whether the alleged victim's ability to exercise his own free will was subverted. Id. at 283.

Mr. Sheets alleges that the plaintiffs threatened him with physical and reputational harm "in order to force [his] buyout of his DSS Holdings stock at a

depressed value." He says that Mr. Wilkinson told him, "[Y]ou have no choice we will take the stock by any means necessary." He says Mr. Wilkinson also told him to "go ahead and try me" because he would "ruin" Mr. Sheets. He alleges that Mr. Wilkinson told him, "I slit people's throats who threaten me" and, "I will slit your throat." These facts, accepted as true, allege threatened violence or restraint intended to compel Mr. Sheets to enter into a settlement agreement, and those threats subverted Mr. Sheets' ability to exercise his free will. His claim for duress was sufficiently stated.

A party bringing a claim of fraudulent inducement must allege there was a "(i) material misrepresentation of past or existing facts by the party to be charged (ii) which was false (iii) which was made with knowledge or reckless ignorance of the falseness (iv) was relied upon by the complaining party and (v) proximately caused the complaining party injury." Reed v. Reid, 980 N.E.2d 277, 292 (Ind. 2012).

Mr. Sheets alleges that he signed the 2018 settlement agreement based on the plaintiffs' fraudulent misrepresentation about his stock's value. He says, "Based upon this false valuation, Sheets informed Plaintiffs that he had reconsidered his request for redemption of his stock." The plaintiffs interpret this statement to mean that Mr. Sheets knew when he told the plaintiffs he was reconsidering redemption of his stock that the plaintiffs had given him a false valuation. They argue that Mr. Sheets can't claim he was deceived by information that he knew was false.

The court can reasonably infer that Mr. Sheets alleges that the stock

valuation he received from the plaintiffs was false based on hindsight. In his claim, Mr. Sheets alleges the plaintiffs knowingly made a material false statement about the value of his interest in DSS Holdings, and he relied on it to sign a settlement agreement to his detriment. Those allegations suffice to state a claim for fraudulent inducement.

### b. Count IV: Securities Fraud

The plaintiffs argue that Mr. Sheets's claim for security fraud fails because his interest in DSS Holdings, LLC wasn't a security and Mr. Sheets didn't plead the claim with particularity.

The parties disagree as to how to characterize Mr. Sheets's interest in DSS Holdings, LLC. The plaintiffs allege the interest wasn't a security. Mr. Sheets argues that the pleading standards for securities fraud don't apply to his interest because it wasn't purchased on a national exchange. The Securities and Exchange Act defines a security as "any note, stock, treasury stock, security future, security-based swap, bond, debenture, certificate of interest or participation in any profit-sharing agreement[.]" 15 U.S.C. § 78c(a)(10). The heightened pleading standards for securities fraud apply to his claim.

A plaintiff making a claim of fraud must state the circumstances "with particularity." Fed. R. Civ. P. 9(b). "The particularity requirement ensures that plaintiffs do their homework before filing suit and protects defendants from baseless suits that tarnish reputations." Perelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co., 631 F.3d 436, 439 (7th Cir. 2011);

6

Borsellino v. Goldman Sachs Group, Inc., 477 F.3d 502, 507 (7th Cir. 2007) ("This heightened pleading requirement is a response to the great harm to the reputation of a business firm or other enterprise a fraud claim can do."). "Because fair notice is perhaps the most basic consideration underlying Rule 9(b), the plaintiff who pleads fraud must reasonably notify the defendants of their purported role in the scheme." Vicom, Inc. v. Harbridge Merchant Servs., Inc., 20 F.3d 771, 777 (7th Cir. 1994) (internal citations and quotations omitted). Rule 9(b) generally requires a plaintiff alleging fraud to plead the "who, what, when, where, and how of the fraud." Camasta v. Joseph A. Bank Clothiers, Inc., 761 F.3d 732, 737 (7th Cir. 2014).

To state a claim for securities fraud, a plaintiff must allege "(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." Cornielsen v. Infinium Capital Mgmt., LLC, 916 F.3d 589, 598 (7th Cir. 2019) (*quoting* Pugh v. Tribune Co., 521 F.3d 686, 693 (7th Cir. 2008)). "[C]omplaints alleging securities fraud [must] 'state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind.'" Cornielsen v. Infinium Capital Mgmt., LLC, 916 F.3d 589, 598-599 (7th Cir. 2019) (*citing* 15 U.S.C. § 78u-4(b)(2)(A)). The complaint must specify each statement or omission that was misleading and explain why it was misleading. Id.

The plaintiffs argue that Mr. Sheets didn't allege his claim with

7

particularity or meet the heightened standards for pleading securities fraud. They contend that he lumped all defendants together in his counterclaim without identifying who made which alleged misrepresentations or whether that person had the requisite scienter.

Mr. Sheets alleges that Mr. Wilkinson and Mr. Miller made multiple misrepresentations about his interest in DSS Holdings. He says Mr. Wilkinson told him DSS Holdings would gain a "significant new client," Unique Fabricating, Inc., if Mr. Sheets agreed to sell his company and take an interest in DSS Holdings. He says the plaintiffs told him the deal with Unique was "in the bag" and that the "value, stability, and profitability" of his 20% interest would increase once a contract with Unique was executed. Mr. Sheets alleges that these representations were "false and made with fraudulent intent." Further, Mr. Sheets alleges that in November 2017, Mr. Miller told Mr. Sheets that his 20% interest would be worth $3.2 million within three years of closing the asset purchase agreement, and DSS Holdings' revenue would increase by over $10 million. Mr. Sheets alleges that Mr. Miller made this representation to induce Mr. Sheets into signing the agreement, but that the plaintiffs "never intended to honor the [asset purchase agreement]."

Mr. Sheets claims that after he signed the asset purchase agreement, "Plaintiffs piled debt and liabilities upon DSS Holdings related to Plaintiffs' other business ventures or personal expenditures and thereby depressed the value of Sheets' 20% interest." Specifically, he says the plaintiffs charged DSS Holdings a $400,000 management and consulting fee within 10 months of their contract

agreements. He also alleges that the plaintiffs withdrew a $70,000 management fee advance in January, and that Mr. Miller authorized DSS Holdings to pay legal fees that weren't generated by the company and predated its formation. Finally, Mr. Sheets claims that nine months after he signed the agreements that gave him an interest in DSS Holdings, he asked the plaintiffs to redeem his shares under the terms of the operating agreement, and the plaintiffs falsely told him his shares had no value.

Accepting these facts as true and construing them in the light most favorable to Mr. Sheets, the court can infer that Mr. Sheets has stated a claim for securities fraud with particularity. He alleges that the plaintiffs knowingly made material misrepresentations about business partnerships and the value of his share in DSS Holdings to induce him to sell his company and to prevent him from cashing his shares in for their true value.

### c. Count V: Common Law Fraud

The plaintiffs argue that Mr. Sheets' common law fraud claim fails because he didn't plead it with the particularity required by Fed. R. Civ. P. 9(b). The elements of a common law fraud claim in Indiana are "(1) a material misrepresentation of past or existing fact which (2) was untrue, (3) was made with knowledge of or in reckless ignorance of its falsity, (4) was made with the intent to deceive, (5) was rightfully relied upon by the complaining party, and (6) which proximately caused the injury or damage complained of." Kesling v. Hubler Nissan, Inc., 997 N.E.2d 327, 335 (Ind. 2013).

In Count V of his counterclaim, Mr. Sheets alleges, "Plaintiffs have made false, misleading or mischaracterized representations and/or concealments" that induced him to enter business transactions that were materially harmful. The allegation reincorporates the previous paragraphs of his answer and counterclaim, including the facts that supported his claim for securities fraud. Mr. Sheets also alleges that the plaintiffs allocated credits and losses to his interest in DSS Holdings and falsely reported to the IRS that he didn't make a valuable contribution to DSS Holdings, despite a $125,000 capital contribution.

Mr. Sheets has pointed to specific statements he alleged were fraudulent and identified the speakers of those statements in his claims. He has also stated his claims about IRS reporting and tax benefits and losses as specifically as can reasonably be expected without further discovery. Accordingly, he has stated a plausible claim for common law fraud.

*d. Count VI: Civil Conspiracy*

The plaintiffs argue that Mr. Sheets doesn't state a plausible claim for civil conspiracy. "A civil conspiracy is a combination of two or more persons who engage in a concerted action to accomplish an unlawful purpose or to accomplish some lawful purpose by unlawful means." Bd. of Trustees of Purdue Univ. v. Eisenstein, 87 N.E.3d 481, 498 (Ind. Ct. App. 2017) (internal quotations omitted). Civil conspiracy is not an independent cause of action, but rather a cause for damages that must be alleged with an underlying tort. Id. To state a claim for civil conspiracy, Mr. Sheets "must allege a concerted action in the

10

commission of a tort that resulted in damages." K.M.K. v. A.K., 908 N.E.2d 658, 664 (Ind. Ct. App. 2009).

Mr. Sheets's claim at Count VI reincorporates the previous paragraphs of his counterclaims, including his claims of securities and common law fraud. Those claims include allegations that the plaintiffs acted in concert to make fraudulent misrepresentations to induce him to sell his company and that they acted in concert to fraudulently reduce the value of his stake in DSS Holdings. Mr. Sheets has properly stated a claim for civil conspiracy.

*e. Count VII: Defamation, Libel, Invasion of Privacy, and False Light*

The plaintiffs first argue that Count VII should be dismissed because Mr. Sheets hasn't stated a claim for defamation. To bring an action for defamation, a plaintiff must demonstrate "(1) a communication with defamatory imputation; (2) malice; (3) publication; and (4) damages." Kelley v. Tanoos, 865 N.E.2d 593, 597 (Ind. 2007). The plaintiffs contend that Mr. Sheets hasn't alleged any facts showing publication of a defamatory statement.

Mr. Sheets says in his counterclaims that a business associate said the plaintiffs told him Mr. Sheets "purchased a car for sex favors for a co-worker" and they had "fired Sheets for sexually assaulting women." A statement is published for the purposes of a defamation claim if it is communicated to a third party. Bals v. Verduzco, 600 N.E.2d 1353, 1354 (Ind. 1992). Mr. Sheets alleged the publication element of defamation, so the claim survives.

The plaintiffs also argue that Mr. Sheets's claim for false light should be

11

dismissed because hasn't adequately alleged special damages. Indiana follows the Second Restatement of Torts for the false light invasion of privacy tort. Under the Restatement, a person who gives publicity to a matter concerning another is liable for false light if "(a) the false light in which the other was placed would be highly offensive to a reasonable person, and (b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed." Restatement (Second) of Torts § 652E (1977); Carson v. Palombo, 18 N.E.3d 1036, 1047 (Ind. Ct. App. 2014). Special damages aren't an element of a false light claim, so the sufficiency of Mr. Sheets' claim for special damages isn't grounds to dismiss Count VII.

*f. Count VIII: Tortious Interference*

The plaintiffs argue that Mr. Sheets states no claim for tortious interference. A claim for tortious interference must establish: (1) the existence of a valid, enforceable contract; (2) the defendant's knowledge of the contract; (3) "the defendant's intentional inducement of the breach of the contract;" (4) "the absence of justification;" and (5) damages. Guinn v. Applied Composites Eng'g, Inc., 994 N.E.2d 1256, 1267 (Ind. Ct. App. 2013) (*citing* Allison v. Union Hosp., Inc., 883 N.E.2d 113, 118 (Ind. Ct. App. 2008)).

Mr. Sheets argues generally that the plaintiffs prevented him from "maintaining and/or growing the value of DSS Holdings," but nothing in his counterclaims allege interference with a specific contract, or even the existence of a contract with a third party that the plaintiffs could have interfered with. He

hasn't alleged the elements of a claim for tortious interference.

### g. Count IX: Misrepresentation and Promissory Estoppel

Mr. Sheets labels Count IX of his counterclaims as one for misrepresentation and promissory estoppel. The plaintiffs argue that Mr. Sheets doesn't state a claim for promissory estoppel.

A claim for promissory estoppel has five elements: "(1) a promise by the promissor (2) made with the expectation that the promisee will rely thereon (3) which induces reasonable reliance by the promisee (4) of a definite and substantial nature and (5) injustice can be avoided only by enforcement of the promise." Biddle v. BAA Indianapolis, LLC, 860 N.E.2d 570, 581 (Ind. 2007) (internal quotation omitted).

Mr. Sheets responds to the plaintiffs' motion to dismiss by pointing to three allegations: that Mr. Wilkinson misrepresented the fact that Unique Fabricating would become a DSS Holdings customer; that the defendants misrepresented the value of DSS Holdings nine months after Mr. Sheets sold it; and that he entered into the 2018 settlement agreement based on the plaintiffs' misrepresentations. Mr. Sheets' counterclaims describe projections and predictions from the plaintiffs and alleges that those statements were misleading and harmful, but he doesn't cite any promises upon which the plaintiffs refused to deliver. His allegations don't state a plausible claim for promissory estoppel.

*h. Count X: Failure to Account*

In his last claim, Mr. Sheets contends that the plaintiffs are required to "provide the material facts necessary for Sheets and others similarly situated to protect their interests." He alleges that one or more of the plaintiffs is "not prudently managing" DSS Holdings' assets and continues to "deplete DSS Holdings' assets through waste, mismanagement and self-dealing." He claims that the plaintiffs have failed to provide an accounting for DSS Holdings despite legitimate requests for one. The plaintiffs respond that Mr. Sheets waived his right to an accounting under the terms of the operating agreement.

When addressing claims under a contract, the court looks to the contract itself to discern the parties' intent, Citimortage, Inc. v. Barabas, 975 N.E.2d 805, 813 (Ind. 2012); Zukerman v. Montgomery, 945 N.E.2d 813, 819 (Ind. Ct. App. 2011), giving the contract's terms their clear and ordinary meaning. State Farm Mut. Auto Ins. Co. v. Cox, 873 N.E.2d 124, 127 (Ind. Ct. App. 2007). The operating agreement says, "No Member shall have the right or power to bring an action for... an accounting[.]" Alone, this clause says that Mr. Sheets had no right to an accounting. But the operating agreement also says that the vice president of finance shall keep complete and accurate records and books in the company's principal office that can be inspected during normal business hours upon a member's reasonable request. The vice president of finance must also maintain in the principal office copies of the company's federal, state, and local tax forms; copies of any of the company's financial statements; lists of cash and a statement of value of other properties or services each member agreed to

contribute to the company; and the books and records of the company.

Mr. Sheets had a right to view certain financial information and records as a member of DSS Holdings under these terms. Accordingly, the operating agreement doesn't show that Mr. Sheets released his claims under Count X.

*i. Motion for Leave to File Surreply*

Mr. Sheets filed a motion seeking leave to file sur-reply, arguing that the plaintiffs raised new legal bases for their motion to dismiss in their response. The issues presented have been adequately briefed in accordance with Local Rules, and no further briefing is authorized or needed.

### III. Conclusion

The court GRANTS the plaintiffs' motion to dismiss [Doc. No. 32] is GRANTED as to Count VIII and Count IX and DENIES the motion as to Counts I, II, III, IV, V, VI, VII, and X. The defendant's motion for leave to file a sur-reply [Doc. No. 43] is DENIED.

SO ORDERED.

ENTERED:   June 25, 2020

                                        /s/ Robert L. Miller, Jr.
                                       Judge, United States District Court