UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| WILLIAM JAY WILKINSON, *et al.*, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | )   Cause No. 3:19-CV-902-RLM |
| | ) |
| MATTHEW SHEETS | ) |
| | ) |
| Defendant | ) |

OPINION AND ORDER

William Jay Wilkinson and Jeffrey Miller invest in staffing companies through Hoosier Investments, LLC, and Hoosier's subsidiary company, DSS Holdings, LLC. In January 2018, Mr. Wilkinson and Mr. Miller entered into a business agreement with Matthew Sheets, who owned his own staffing company, Day Star Staffing, LLC. Later in the year, their business relationship soured, but the parties reached a separation and settlement agreement. Mr. Wilkinson, Mr. Miller, Hoosier Investments, and DSS Holdings sued Mr. Sheets for breaching the settlement agreement and for defamation. Mr. Sheets filed various tort and contract claims in response. Before the court are Mr. Sheets's motion for summary judgment on the plaintiffs' defamation per se claim, [Doc. No. 123], the plaintiffs' motion for summary judgment on all of Mr. Sheets's counterclaims, [Doc. No. 114], and the plaintiffs' motion to strike various materials related to Mr. Sheets's opposition brief, [Doc. No. 142]. The court heard oral argument on November 29, and now DENIES Mr. Sheets's motion for summary judgment,

GRANTS the plaintiffs' motion for summary judgment, and DENIES the plaintiffs' motion to strike as moot.

I. BACKGROUND

William Wilkinson and Jeffrey Miller work together in the business of light industrial staffing and invest in the industry through Hoosier Investments, LLC, and Hoosier's subsidiary company, DSS Holdings, LLC. They are based in Indiana but invest in companies in other states in the region. In January 2018, Mr. Wilkinson and Mr. Sheets entered into a business agreement with Matthew Sheets. Mr. Sheets owned a staffing business, Day Star Staffing, LLC, based in Ohio. Under that agreement, Mr. Sheets sold Day Star Staffing to DSS Holdings in exchange for a 20% interest in DSS Holdings and an employment contract by which Mr. Sheets would manage Day Star's day-to-day operations.

The parties' business relationship became untenable. They reached a separation and settlement agreement in November 2018 that ended Mr. Sheets's employment with DSS Holdings. According to the agreement, Mr. Sheets also released all claims against Mr. Wilkinson, Mr. Sheets, and the companies.

Around January 2019, the parties had a new dispute about a contract that Mr. Wilkinson and Mr. Miller claimed Mr. Sheets had executed on behalf of DSS

without authorization and installment payments that were due to Mr. Sheets. The parties renegotiated and entered into a new settlement agreement in April 2019. Mr. Sheets would receive $160,000 in exchange for a release of all claims against Mr. Wilkinson, Mr. Miller, and their companies. The release read in relevant part:

> I, Matt Sheets, for and in consideration of the payment of $160,000, the receipt and sufficiency of which is hereby acknowledged . . . do hereby release and forever discharge DSS Holdings, LLC ("DSS"), Hoosier Investments, LLC ("Hoosier") and their respective agents . . . from any and all claims, demands, damages, actions, causes of action or suits of any kind or nature whatsoever, known or unknown, which I now have or may hereafter have, including but not limited to any arising out of or in any way relating to the Separation and Settlement Agreement, General release, and Covenant Not To Sue, dated November 19, 2019 and any non-performance by DSS or Hoosier of their obligations thereunder.

[Doc. No. 116-15].

On September 4, 2019, Mr. Sheets published a Facebook post that gave rise to the plaintiffs' defamation claim. The post included the following:

3



**Matt Sheets**
September 4 at 2:55 PM

Staying sharp and motivated has been hard lately. I am sure some of you wont understand this but others will totally understand it and use something for their own motivation. Learning about the cruelties of the world sometimes wears me down. Normally I put motivators in my closet to see each time I get dressed. But I had these made a year or so ago , and needed some motivation. These pictures are symbolic and mean more than just the actual image. The first one was when I was told I would have my throat slit for standing up for myself but means much more. It means watch out for people who are your friends but will metaphorically slit your throat when you have a different view point or they feel as if your no longer needed. It also symbolizes the fight between good choices and bad ones (devil and angel) everyone goes through. The digging of the hole symbolizes burying of bad deeds with a smile. The lock symbolizes moving on symbolically changing the locks. While the figure counting the money has the meaning of there is more to life than just counting your money while things around you happen. The second picture is from a time when through force , among other things I was told I had to sign some papers selling certain assets or else, with this alot of really bad things were happening around me. It symbolizes to stand up for yourself BUT more importantly stand up for what is right and MOST importantly stand up for others. That is what the peak around the corner symbolize. To stand up for others when you see they need it. I am still working on my book and I am not allowed yet to speak freely, but there is a chapter about corruptions and how big business changes people, that is filed away for a few years still including some quotes from recorded calls and emails that will shock you. So until then stay motivated my friends.



**Matt Sheets**
Follow · September 4

👍 Like      ↗ Share

4



The Facebook post's images appeared to show Mr. Wilkinson and Mr. Miller burying Mr. Sheets alive and holding a gun to his head. There was also an image of a rat with Mr. Miller's face. The text of the post said in part, "These pictures are symbolic and mean more than just the actual image. The first one was when I was told I would have my throat slit for standing up for myself but means much more," and "The second picture is from a time when through force, among other things I was told I had to sign some papers selling certain assets or else."

The plaintiffs sued Mr. Sheets in state court in September 2019, alleging that he breached their settlement agreement's non-compete and non-disparagement provisions and alleging defamation per se and defamation per quod, arising from his Facebook post. Mr. Sheets removed the case to federal court and filed ten counterclaims against the plaintiffs. The plaintiffs moved to dismiss Mr. Sheets's counterclaims, and the court dismissed two claims but denied the motion as to all other claims. That left claims for (1) breach of contract; (2) breach of fiduciary duty; (3) a declaratory judgment that the 2018 settlement agreement is void or voidable; (4) securities fraud; (5) common law fraud; (6) civil conspiracy; (7) defamation, libel, invasion of privacy, and false light; and (8) failure to provide an accounting.

Mr. Sheets and the plaintiffs both filed motions for summary judgment. The plaintiffs also filed a motion to strike various materials related to Mr. Sheets's brief in opposition to their motion for summary judgment. Shortly before the court heard argument on the motions, the plaintiffs voluntarily dismissed their claims for breach of contract and defamation per quod, leaving only their claim for defamation per se. Pending before the court is the plaintiffs' motion for summary judgment, Mr. Sheets's motion for summary judgment, and the plaintiffs' motion to strike.

II. STANDARD OF REVIEW

Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A genuine issue of material fact exists whenever "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). In deciding whether a genuine issue of material fact exists, we accept the non-movant's evidence as true and draw all inferences in his favor. Id. at 255. Nevertheless, the nonmoving party it not entitled to "[i]nferences that are supported by only speculation or conjecture." Argyropoulos v. City of Alton, 539 F.3d 724, 732 (7th Cir. 2008). The existence of an alleged factual dispute, by itself, won't defeat a summary judgment motion; "instead, the nonmovant must present definite, competent evidence in rebuttal," Parent v. Home Depot U.S.A., Inc., 694 F.3d 919, 922 (7th Cir. 2012), and "must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial." Hemsworth v. Quotesmith.com, Inc., 476 F.3d 487, 490 (7th Cir. 2007); see also Fed. R. Civ. P. 56(e)(2).

III. DISCUSSION

*A. Choice of law.*

The court is hearing the parties' claims under its diversity jurisdiction, so the court must first determine which law applies to the dispute. A federal court exercising its diversity jurisdiction applies the choice-of-law rules of the state in which it sits. NewSpin Sports, LLC v. Arrow Elecs., Inc., 910 F.3d 293, 300 (7th Cir. 2018). Indiana choice of law doctrine favors enforcement of choice-of-law clauses included in contracts. Allen v. Great Am. Reserve Ins. Co., 766 N.E.2d 1157, 1162 (Ind. 2002). The parties' settlement agreements designated Indiana law as their choice of law. Although Mr. Sheets argues he isn't bound by the agreement, he agrees that Indiana law governs the suit. Accordingly, Indiana law applies to the parties' claims.

*B. Mr. Sheets's motion for summary judgment on defamation per se.*

Mr. Sheets moves for summary judgment, arguing that the Facebook post doesn't amount to defamation per se, for several reasons. To prove defamation per se, a plaintiff must show (1) a communication imputing criminal conduct; a loathsome disease; misconduct in one's trade, profession, office, or occupation;

8

or sexual misconduct, (2) malice,[1] and (3) publication. Baker v. Tremco Inc., 917 N.E.2d 650, 657 (Ind. 2009). A defendant shows actual malice by publishing a defamatory communication either with knowledge that it's false or with reckless disregard as to its truth or falsity. Poyser v. Peerless, 775 N.E.2d 1101, 1107 (Ind. Ct. App. 2002) (citations and quotations omitted). Although defamation normally requires special damages, damages are presumed for defamation per se. Baker v. Tremco, 917 N.E.2d at 657.

First, Mr. Sheets argues that he's entitled to judgment because the Facebook post doesn't identify the plaintiffs by name with words. Indiana defamation law doesn't specifically require words but requires a communication. Communication is defined broadly—defamatory communications can be "expressed either by writing or printing, or by signs, pictures, effigies, or the like." Cronin v. Zimmerman, 88 N.E. 718, 719 (Ind. App. 1909) (citation omitted).

---

[1] Defamation only requires a showing of negligence for private plaintiffs in private matters. State Farm Fire & Cas. Co. v. Radcliff, 987 N.E.2d 121, 138 (Ind. Ct. App. 2013); Journal-Gazette Co. v. Bandido's, Inc., 712 N.E.2d 446, 452–453 (Ind. 1999). Because neither party argued whether the plaintiffs are public figures or whether the matter is of public or general concern, and both parties assumed the claim requires actual malice, the court considers malice to be an element for the purposes of the motion for summary judgment.

Although some of the cases Mr. Sheets cites refer to "words," "text," or "statements," the courts deciding those cases used these words interchangeably with "communication" because the communications in those cases were expressed with written words—the cases don't hold that a defamatory statement must identify the plaintiff with text. See Ind. Newspapers Inc. v. Junior Achievement of Cent. Ind., Inc., 963 N.E.2d 534 (Ind. Ct. App. 2012) (considering public comments on a newspaper's website); Baker v. Tremco Inc., 917 N.E.2d 650, 658 (Ind. 2009) (referring to "words" but not holding that communications must be written words); Moore v. Univ. of Notre Dame, 968 F. Supp. 1330, 1334 (N.D. Ind. 1997) (discussing whether the words at issue amounted to a serious charge of misconduct but not holding that written words are required); Ballantine v. Amazon.com.indc LLC, 2019 U.S. Dist. LEXIS 99382, at *31 (S.D. Ind. Mar. 14, 2019) (dismissing defamation claim because complaint didn't satisfy Fed. R. Civ. P. 8(a)). Indiana law doesn't require plaintiffs be identified with words, so Mr. Sheets isn't entitled to summary judgment on these grounds.

Next, Mr. Sheets argues that the post isn't defamatory per se because someone viewing the post would need extrinsic information to understand any defamatory meaning. See Dugan v. Mittal Steel USA Inc., 929 N.E.2d 184, 186 (Ind. 2010). According to Mr. Sheets, a viewer could only glean any defamatory

10

meaning upon learning more about the parties' business dealings. Mr. Sheets doesn't explain how a depiction of the plaintiffs holding a gun to Mr. Sheets's head doesn't impute criminal conduct by itself. Relatedly, he argues that the post isn't offensive enough to be defamatory. A communication imputing criminal conduct or professional misconduct might not be defamatory if it isn't a serious charge of such misconduct. Ind. Newspapers, Inc. v. Junior Achievement of Cent. Ind., Inc., 963 N.E.2d 534, 550–551 (Ind. Ct. App. 2012) (citing Moore v. Univ. of Notre Dame, 968 F. Supp. 1330, 1334 (N.D. Ind. 1997)). This argument is unavailing when the words of the post accuse the plaintiffs of threatening to slit his throat: "These pictures are symbolic and mean more than just the actual image. The first one was when I was told I would have my throat slit for standing up for myself but means much more." The post constitutes a serious charge of criminal misconduct, so Mr. Sheets isn't entitled to summary judgment on these grounds.

Mr. Sheets then turns to the element of malice, arguing that the plaintiffs have no evidence that he acted with malice. A defendant acts with actual malice when he "publishes a defamatory statement with knowledge that it was false or with reckless disregard of whether it was false or not." Poyser v. Peerless, 775 N.E.2d 1101, 1107 (Ind. Ct. App. 2002) (citations and quotations omitted).

11

Because a person's state of mind is a subjective fact, it may be shown by indirect or circumstantial evidence. Ratcliff v. Barnes, 750 N.E.2d 433, 437 (Ind. Ct. App. 2001). "The initial question of whether there is sufficient evidence to support a finding of actual malice is a question of law to be determined by the court." Id.

Mr. Sheets asserts that the plaintiffs have no evidence that Mr. Sheets entertained doubt as to the truth or falsity of his statements and that it isn't enough that they deny making threats. When viewed in the context of the alleged threats, the plaintiffs' denials are the sort of indirect evidence that would prove Mr. Sheets's state of mind. A factfinder might believe Mr. Sheets and conclude that Mr. Wilkinson threatened him. Or a factfinder could believe Mr. Wilkinson and believe that he never threatened Mr. Sheets. The factfinder who believes Mr. Wilkinson could reasonably infer that if Mr. Wilkinson never threatened Mr. Sheets yet Mr. Sheets claims he was threatened, that Mr. Sheets actually knew that his communications regarding threats of violence were false. In other words, the plaintiffs have created a genuine issue of whether Mr. Sheets published the Facebook post with actual knowledge of the post's falsity.

Mr. Sheets's makes related arguments concerning whether the plaintiffs provide clear and convincing evidence that the defendant entertained serious doubt as to the truth or falsity. The cases cited generally involve newspaper

12

publishers facing potential liability for publishing information referred to them by their reporters. See Ratcliff v. Barnes, 750 N.E.2d 433, 437 (Ind. 2001); Journal-Gazette Co. v. Bandido's, Inc., 712 N.E.2d 446 (Ind. 1999); N.Y. Times Co. v. Sullivan, 376 U.S. 254 (1964). Unlike in those cases, Mr. Sheets claims firsthand knowledge of threats, so evidence that Mr. Wilkinson never threatened him is clear and convincing evidence of his knowledge.

Finally, Mr. Sheets argues he's entitled to summary judgment because truth is an absolute defense to defamation and the Facebook post depicts his opinion of what happened between him and the plaintiffs. See Gatto v. St. Richard Sch., Inc., 774 N.E.2d 914, 924 (Ind. Ct. App. 2002) ("[T]ruth is a complete defense to defamation."). Whether Mr. Sheets was threatened is one of the very facts in dispute and deeming his disputed account of what happened as the truth isn't something a court can do at the summary judgment stage.

In summary, Mr. Sheets hasn't shown that he's entitled to judgment on the defamation per se claim and the court denies his motion for summary judgment.

13

*C. The plaintiffs' motion for summary judgment on all counterclaims.*

The plaintiffs move for summary judgment on Mr. Sheets's counterclaims, arguing that Mr. Sheets waived all claims with the November 2018 and April 2019 settlement agreements. Mr. Sheets argues that the agreements are unenforceable because he entered into them under duress, the plaintiffs breached the agreements first, and the agreements lacked adequate consideration.[2] The plaintiffs deny threatening Mr. Sheets, claim they'd already formed the November 2018 agreement before any alleged threats, claim that consideration was adequate, and argue that Mr. Sheets can't claim duress after having ratified the agreements.

---

[2] Mr. Sheets also argues that Indiana law precludes a court from deciding whether there's a genuine issue of material fact regarding duress at summary judgment, citing Weiser v. Godby Bros. 659 N.E.2d 237, 239 (Ind. Ct. App. 1995). This misstates Indiana law; a later court clarified that Weiser was nonprecedential and that summary judgment could resolve the question of duress. Robinson v. Century Person., 678 N.E.2d 1268, 1270 n.2 (Ind. Ct. App. 1997). Even if Weiser were controlling in Indiana courts, the court would decide the question under Fed. R. Civ. P. 56 since Weiser's rule was procedural and courts sitting in diversity don't apply state procedural rules. See, e.g., Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co., 559 U.S. 393, 398 (2010); Hanna v. Plumer, 380 U.S. 460 (1965).

The court starts with the plaintiffs' argument that Mr. Sheets ratified the agreement. If there's no genuine dispute as to ratification, Mr. Sheets can't void release provisions of the agreement even if he proves duress.

A contract entered under duress is voidable; the coerced party may void the contract, "provided the contract is not ratified and the election is made within a reasonable time." Rose v. Owen, 85 N.E. 129, 131 (Ind. App. 1908) (citation omitted). Put differently, "[a] party may not claim benefits under a transaction or instrument and, at the same time, repudiate its obligations." Raymundo v. Hammond Clinic Ass'n., 449 N.E.2d 276, 283 (Ind. 1983) (citation omitted). For instance, in In re Estate of Palamara, the plaintiff sought to void a voidable antenuptial agreement despite receiving payments according to the agreement's terms for several months. 513 N.E.2d 1223 (Ind. Ct. App. 1987). Because the plaintiff didn't fully restore the benefits she received, she was deemed to have ratified the contract. Id. at 1228. Likewise, in Schroeder v. Polk, a plaintiff settled claims with an employer for $25,000. 1993 U.S. Dist. LEXIS 21010, at *12 (N.D. Ind. Dec. 22, 1993). The plaintiff sued the employer about four months later, claiming he'd agreed to settle under duress. Id. at *9, *14. The court held that because he'd accepted and retained the $25,000 from the settlement, the plaintiff ratified the agreement and couldn't void the contract. Id. at *18–19.

15

The parties don't dispute that Mr. Sheets received payment pursuant to the April settlement agreement and never returned the payment. Mr. Sheets argues his case is different than those cited by the plaintiff because he only waited a few months to sue to invalidate the agreement. See Castellano v. Wal-Mart Stores, Inc., 373 F.3d 817 (7th Cir. 2004) (approximately seven years); Anderson v. Indianapolis Ind. AAMCO Dealers Advert. Pool, 678 N.E.2d 832 (Ind. Ct. App. 1997) (eight years). While Mr. Sheets's delay might be more reasonable than in those cases, he hasn't explained why he should be able to repudiate the agreement despite receiving and retaining proceeds from the agreement. In Palamara, the plaintiff was barred from voiding what otherwise might have been a voidable contract because she never returned the benefit of the contract. 513 N.E.2d at 1228. So too in Schroeder, the plaintiff, who claimed duress a mere four months after agreeing to settle, was barred from voiding the contract for duress because he retained the proceeds of the settlement. 1993 U.S. Dist. LEXIS 21010, at *18–19. Mr. Sheets says Palamara is different because he's alleging prior breach, unlike the plaintiff in Palamara, but that distinction makes no difference. That Mr. Sheets has different reasons for claiming the contract is voidable doesn't change the rule that a person can't void a contract that they've ratified. Mr. Sheets has undisputedly received and retained the benefits of the

16

agreement and under Indiana law, Mr. Sheets can't void the settlement agreements for duress.

Mr. Sheets argues the November 2018 agreement is unenforceable against him because the plaintiffs breached the agreement first. Whether the plaintiffs breached the November 2018 agreement first is immaterial because it doesn't affect the enforceability of the April 2019 release and because Mr. Sheets released any claim of prior breach of the November agreement with the April release. His remaining argument, that the agreement lacked adequate consideration, is unavailing. Under Indiana law, a court "do[es] not inquire into the adequacy of consideration," and "an exchange of mutual promises is consideration which supports modification of a contract." Hamlin v. Steward, 622 N.E.2d 535, 539 (Ind. Ct. App. 1993). With the April 2019 agreement, Mr. Sheets released any claims that accrued between then and November 2018 in exchange for a payout. The court isn't required to and won't look any further.

There is no genuine issue as to the enforceability of the April 2019 settlement agreement by which Mr. Sheets released the plaintiffs of all claims. Accordingly, the plaintiffs are entitled to summary judgment on Mr. Sheets's counterclaims and the court grants their motion for summary judgment.

17

*D. The plaintiffs' motion to strike materials related to Mr. Sheets's opposition brief.*

The plaintiffs moved to strike various exhibits, subject, and arguments relating to and included in Mr. Sheets's brief in opposition to the plaintiffs' motion for summary judgment. The plaintiffs made various arguments related to relevancy, Fed. R. Civ. P. 26 disclosure requirements, and the like. The plaintiffs alternatively moved for reopening of discovery to depose Larry Babics, who provided a declaration about alleged threats. The entire motion related to Mr. Sheets's arguments about the enforceability of the settlement agreement, which the court resolved without having to consider any of the materials or subjects in the motion to strike. Accordingly, the court denies the motion to strike as moot.

IV. CONCLUSION

Mr. Sheets hasn't shown that there's no genuine dispute as to any material fact on the plaintiffs' defamation per se claim, so the court DENIES his motion for summary judgment. [Doc. No. 123]. The plaintiffs have shown that there's no genuine dispute as to the enforceability of Mr. Sheets's release of claims, so the court GRANTS their motion for summary judgment. [Doc. No. 114]. The plaintiffs' motion to strike is DENIED AS MOOT. [Doc. No. 142].

18

SO ORDERED.

ENTERED: December 6, 2021

                                  /s/ Robert L. Miller, Jr.
                              Judge, United States District Court